JS 44  (Rev. 10/20) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ELIZABETH TAYLOR

### DEFENDANTS

Aqua Services, Inc., Aqua America, Inc., Essential Utilities, Inc., Essential Utilities Company, & Aqua, Inc.

**(b)** County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lane J. Schiff , Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th Floor
Philadelphia, PA 19102 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV |
| | | | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☒ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq. ("Title VII"), Title 42 U.S.C. §1981 ("Section 1981"); 29 U.S.C. §621, et seq. ("ADEA"), 42 U.S.C. § 12101, et seq. ("ADA"); 43 P.S. § 951, et seq. ("PHRA"); 29 U.S.C. §2601, et seq. ("FMLA").

Brief description of cause:
Plaintiff brings this action against her former employers for discrimination based on her race, age, disability and retaliation and in violation of the FMLA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE
May 19, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Newtown, PA 18940 _____

Address of Defendant: _____ 4762 W. Lancaster Avenue, Bryn Mawr, PA 19010 _____

Place of Accident, Incident or Transaction: _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/19/23 _____  _____ _____ 314179 _____
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.  Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

*B.  Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Lane J. Schiff, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 5/19/23 _____  _____ _____ 314179 _____
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Elizabeth Taylor | : | CIVIL ACTION |
| PLAINTIFF, | : | |
| v. | : | |
| Aqua Services, Inc., Aqua America, Inc., Essential Utilities, Inc., Essential Utilities Company, & Aqua, Inc. | : | NO. |
| DEFENDANT. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( X)

May 19, 2023

| | | |
|---|---|---|
| **Date** | **Attorney-at-law** | **Plaintiff,** Elizabeth Taylor<br>**Attorney for** |
| (215) 545-7676 | (215) 565-2859 | schiff@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIZABETH TAYLOR** | : | |
| **166 Bucks Meadow Lane** | : | |
| **Newtown, PA 18490** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| | : | |
| **AQUA SERVICES, INC.** | : | |
| **762 W. Lancaster Avenue** | : | |
| **Bryn Mawr, PA 19010** | : | |
| | : | |
| **AQUA AMERICA, INC.** | : | |
| **762 W. Lancaster Avenue** | : | |
| **Bryn Mawr, PA 19010** | : | |
| | : | |
| **ESSENTIAL UTILTIES, INC.** | : | |
| **762 W. Lancaster Avenue** | : | |
| **Bryn Mawr, PA 19010** | : | |
| | : | |
| **ESSENTIAL UTILITIES COMPANY** | : | |
| **762 W. Lancaster Avenue** | : | |
| **Bryn Mawr, PA 19010** | : | |
| | : | |
| **&** | : | |
| | : | |
| **AQUA, INC.** | : | |
| **762 W. Lancaster Avenue** | : | |
| **Bryn Mawr, PA 19010** | : | |
| | : | |
| **Defendants.** | : | |

## **COMPLAINT**

### I.  **INTRODUCTION**

Plaintiff, Elizabeth Taylor, brings this action against her former employers, Aqua

Services, Inc., Aqua America. Inc., Essential Utilities, Inc., Essential Utilities Company, &

Aqua, Inc., ("Defendants").  Defendants discriminated against Plaintiff based on her age, race,

and disability and additionally retaliated against her for engaging in protected activity, in

violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Title 42 U.S.C. §1981 ("Section 1981"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff further brings this action pursuant to the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA") for unlawful discrimination, retaliation, and leave interference. Plaintiff seeks all damages allowable under the law.

## II.    **PARTIES**

1.      Plaintiff, Elizabeth Taylor, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.      Plaintiff was born in June 1954.

3.      Plaintiff is white.

4.      Defendant Aqua Services, Inc. is a corporation with a place of business at 726 W. Lancaster Avenue, Bryn Mawr, Pennsylvania 19010.

5.      Defendant Aqua America, Inc. is a corporation with a place of business at 726 W. Lancaster Avenue, Bryn Mawr, Pennsylvania 19010.

6.      Defendant Essential Utilities, Inc. is a corporation with a place of business at 726 W. Lancaster Avenue, Bryn Mawr, Pennsylvania 19010.

7.      Defendant Essential Utilities Company is a corporation with a place of business at 726 W. Lancaster Avenue, Bryn Mawr, Pennsylvania 19010.

8.      Defendant Aqua, Inc. is a corporation with a place of business at 726 W. Lancaster Avenue, Bryn Mawr, Pennsylvania 19010.

9.      At all times material hereto, Defendants employed more than fifty (50)

employees.

10.     At all times material hereto, Defendants collectively constituted Plaintiff's employer under the joint and/or single employer doctrine.  Upon information and belief, Defendants shared common management, had interrelated operations, and collectively controlled Plaintiff's job duties and responsibilities.

11.     At all times material hereto, Defendants acted by and through its authorized agents and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

12.     At all times material hereto, Defendants acted as an employer within the meaning of the statutes which form the basis of this matter.

13.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

### III.     JURISDICTION AND VENUE

14.     The causes of action that form the basis of this matter arise under the ADEA, Title VII, Section 1981, the ADA, the FMLA, and the PHRA.

15.     The District Court has jurisdiction over Count I (ADEA), Count II (Title VII), Count III (Section 1981), Count IV (ADA), and Count V (FMLA) pursuant to 28 U.S.C. §1331.

16.     The District Court has jurisdiction over Count VI (PHRA), pursuant to 28 U.S.C. §1367.

17.     Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b).

18.     On or about November 23, 2021, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), cross filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as

3

Exhibit "A" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

19.    On or about February 22, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of this notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

20.    Plaintiff is filing this complaint within ninety (90) days from her receipt of this notice.

21.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

22.     Plaintiff commenced her employment with Defendants on or about December 30, 2013.

23.    Plaintiff consistently performed her job duties in a highly competent manner.

24.    Plaintiff last held the position of Risk Management Specialist.

25.    In or about February 2021, Plaintiff began reporting to Shreen Williams (black, approximate age 37), Director of Risk Management. Williams reported to Christopher Luning, Executive Vice President, General Counsel, and Secretary.

26.    Before reporting to Williams, Plaintiff reported to Luning.

27.    Plaintiff was the oldest employee reporting to Williams.

28.    At the time of Plaintiff's termination, in addition to Plaintiff, the following employees directly reported to Williams: Sarah Herchko (white, approximate age 32), Claims Specialist; Craig Nelson (white, approximate age 63), Claims Specialist.

4

29. Williams treated Plaintiff differently, worse, and in a hostile and dismissive manner.

30. Williams unjustly criticized Plaintiff's performance.

31. Williams commented that Plaintiff was "old."

32. Williams commented that Nelson and Plaintiff were "so old" that they did not know what they were doing.

33. Williams referred to Nelson and Plaintiff as "Fred and Ethel," and commented that they did not know what they were doing.

34. Williams commented that "baby boomers" were resistant to change.

35. Williams commented that "baby boomers" were holding Defendants back.

36. Williams commented that "baby boomers" had to go.

37. Williams commented that "baby boomers" were antiquated.

38. Williams commented that, if "baby boomers" did not leave, the "millennials" and "Gen X" employees would leave.

39. Williams made comments about white employees using "white privilege" to get hired.

40. Williams commented it is typically the fifty (50) year old "white guy" that hears a "pop" on a Friday afternoon that causes a workers compensation claim, and this was equivalent white privilege because the employee would try to get a medical procedure paid for by the company.

41. Williams insinuated that Plaintiff was racist, and yelled "what about diversity and inclusion," when Plaintiff mentioned that her cab driver was from Africa.

42. Williams falsely stated that "blacks" were told that they were not allowed on

Defendants' second floor.

43.    In or about May 2021, in a conversation with Luning, Plaintiff complained of age and race discrimination in connection with Williams' comments and conduct.

44.    Luning told Plaintiff that he was aware of the same, but Williams was not going anywhere, and he was going to ignore her comments and conduct.

45.    On or about June 7, 2021, Plaintiff emailed Luning complaining of age and race discrimination in connection with Williams' comments and conduct.

46.    Luning did not substantively respond to Plaintiff's email.

47.    On or about June 7, 2021, following Plaintiff's email complaint, Plaintiff complained of age and race discrimination to Williams.  Plaintiff complained about Williams' above comments and conduct that demonstrated an age and race bias.  Williams did not deny the same.

48.    On or about June 8, 2021, in an email to Luning, Plaintiff asked to schedule a time to speak with him regarding the situation with Williams. Luning did not schedule a time to speak with Plaintiff.

49.    On or about June 11, 2021, Plaintiff complained to Dalinda Carrero-Papi, Employee and Labor Relations Manager, of age and race discrimination in connection with Williams comments and conduct.

50.    On or about June 28, 2021, in a meeting with Williams and Carrero-Papi, Defendants issued Plaintiff a Written Disciplinary Action document.   The document stated that, on June 7, 2021, Plaintiff "demonstrated disrespectful, unprofessional, insubordinate behavior" toward Williams in making Plaintiff's complaints of age and race discrimination.

51.    The Written Disciplinary Action document included false statements and

6

misrepresentations.

52. When Plaintiff asked what was going to be done in response to her age and race discrimination complaints, Plaintiff was falsely accused of attacking, patronizing, and/or being inappropriate toward Williams, and was told that Plaintiff had hurt Williams' feelings.

53. On or about June 29, 2021, Williams denied Plaintiff's request to work from home, despite her position having been designated to be performed remotely. The stated reason was that Plaintiff had been issued a disciplinary action.

54. Other employees were granted their requests to work from home.

55. On or about July 2, 2021, Carrero-Papi informed Plaintiff that she did "not find sufficient information to substantiate the claims [Plaintiff had] raised," and that the investigation was closed.

56. Following Plaintiff's age and race discrimination complaints, she was treated differently and worse.

57. Williams ignored Plaintiff, excluded Plaintiff from meetings and dinners related to her job duties, did not greet Plaintiff when she greeted noncomplaining employees who were sitting next to her, and downplayed and did not acknowledge Plaintiff's accomplishments.

58. Employees commented that Williams was "rude" to Plaintiff.

59. On or about July 21, 2021, Plaintiff commenced a medical leave of absence due to the age and race discrimination to which she was being subjected.

60. Plaintiff suffers from anxiety and depression, which are disabilities under the law in that they substantially impair one (1) or more of Plaintiff's major life activities.

61. Plaintiff's medical leave of absence was a reasonable accommodation for her disabilities.

62.     On or about October 12, 2021, in a phone call with Debra Matos, Human Resources Business Partner, Plaintiff stated that her doctor had cleared her to return to work from her medical leave of absence on November 1, 2021.

63.     On or about October 21, 2021, in an email to Williams and Luning, Plaintiff stated that her doctor had cleared her to return to work from her medical leave of absence on November 1, 2021, and that Plaintiff looked forward to returning to her position. Plaintiff received no response.

64.     On or about October 25, 2021, Plaintiff heard that Williams had told employees that she terminated Plaintiff, and that Defendants hired Plaintiff's replacement.

65.     On or about October 26, 2021, Plaintiff emailed Williams and Luning that she heard that Williams told employees that she terminated Plaintiff's employment and asked for clarification regarding her employment.

66.     On or about October 27, 2021, Defendants terminated Plaintiff's employment, effective November 1, 2021.

67.     Defendants' stated reason was that Plaintiff was not able to resolve her communications issues with Williams and Defendants did not see a way forward.

68.     Defendants replaced Plaintiff with Sara Chandra (black, approximate age 35).

69.     Plaintiff was more qualified to perform her job duties than Chandra.

70.     Defendants failed to remedy or prevent the race, age, and disability discrimination, and retaliation to which Defendants subjected Plaintiff.

71.     Without limitation, Defendants' literature states the following:

       a.     "In early 2021, [Defendants] made a commitment to … increase employee diversity by 20%" over multiple years;

8

b. "[Defendants are] among the first utilities in our peer group to publicly announce both employee and supplier diversity targets that span all of our state operations and all of our utilities. During the coming years, we will … increase the percentage of our employees of color by 20%";

c. "We have confidence in our multiyear plan to reach 17% employees of color, up from about 14% today [2020]";

d. "In 2021, we also added our new diversity goal (5% weighting) to our short-term incentive plan. By tying our diversity targets directly to executive compensation, we are encouraging our management team to prioritize and further building diversity in our operations. We have already seen success in our efforts. In 2020, our diversity hiring for the organization grew by more than 7% from 2019".

72. Plaintiff's age was a motivating and determinative factor in Defendants' discriminatory treatment articulated herein, including Defendants' decision to terminate her employment.

73. Plaintiff's race was a motivating and determinative factor in the discriminatory treatment articulated herein, including Defendants' decision to terminate her employment.

74. Plaintiff's engaging in protected activity was a motivating and determinative factor in the retaliatory treatment articulated herein, including Defendants' decision to terminate her employment.

75. Plaintiff's disability and/or request for a reasonable accommodation were a motivating and determinative factor in Defendants' decision to terminate her employment.

76. Plaintiff's medical leave was a motivating and determinative factor in

9

Defendants' decision to terminate her employment.

77.    Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' actions following Plaintiff's protected activity, including, without limitation, acting in a hostile manner, issuing Plaintiff a Written Disciplinary Action, denying Plaintiff's request to work from home, excluding Plaintiff from meetings and dinners related to her job duties, not greeting Plaintiff when Defendants greeted noncomplaining employees, and downplaying and not acknowledging Plaintiff's accomplishments.

78.    Defendants' conduct following Plaintiff's engaging in protected activity would dissuade a reasonable employee from making complaints.

79.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and/or remedial measures to make the workplace free of discriminatory and retaliatory conduct.

80.    Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

81.    Plaintiff's race, age and/or protected activity were motivating and determinative factors in the hostile work environment to which Plaintiff was subjected.

82.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

83.    As a direct and proximate result of the discriminatory, harassing, and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment,

10

humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

84. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the unlawful behavior complained of herein unless and until this Court grants the relief requested herein.

85. Plaintiff has incurred and is entitled to all costs and reasonable attorneys' fees incurred as a result of the unlawful behavior complained of herein.

## COUNT I – ADEA

86. Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

87. By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated the ADEA.

88. Defendants' violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated and punitive damages.

89. As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

90. No previous application has been made for the relief requested herein.

## COUNT II – Title VII

91. Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

92. By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated Title VII.

93. Defendants acted with malice or a reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

11

94.     As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the injuries, damages, and losses set forth herein.

95.     No previous application has been made for the relief requested herein.

### COUNT III – Section 1981

96.     Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

97.     By committing the foregoing acts of race discrimination, harassment, and retaliation, Defendants violated Section 1981.

98.     Said violations were done with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

99.     As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein.

100.    No previous application has been made for the relief requested herein.

### COUNT IV– ADA

101.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

102.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants violated the ADA.

103.    Defendants acted with malice and/or a reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

104.    As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

105.    No previous application has been made for the relief requested herein.

## COUNT V – FMLA

106.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

107.    By committing the foregoing acts against Plaintiff, Defendants violated the FMLA.

108.    Defendants, by terminating Plaintiff after she took a protected leave of absence, discriminated and retaliated against Plaintiff and violated the FMLA.

109.    By terminating Plaintiff's employment upon her return from FMLA leave, Defendants interfered with Plaintiff's ability to use protected leave under the FMLA.

110.    Defendants' actions were willful.

111.    The imposition of liquidated damages is warranted.

112.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered the damages and losses set forth herein.

113.    No previous application has been made for the relief requested herein.

## COUNT VII – PHRA

114.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

115.    By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated the PHRA.

116.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

117.    No previous application has been made for the relief requested herein.

## RELIEF

13

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of the ADEA;

(b)     declaring the acts and practices complained of herein to be in violation of Title VII;

(c)     declaring the acts and practices complained of herein to be in violation of Section 1981;

(d)     declaring the acts and practices complained of herein to be in violation of the ADA;

(e)     declaring the acts and practices complained of herein to be in violation of the FMLA;

(g)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(j)     enjoining and permanently restraining the violations alleged herein;

(k)     entering judgment against Defendants and in favor of the Plaintiff in an amount to be determined;

(l)     awarding Plaintiff back pay and front pay;

(m)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(o)     awarding Plaintiff liquidated damages;

14

(p)    awarding Plaintiff punitive damages;

(q)    awarding Plaintiff interest;

(r)    awarding Plaintiff such other damages as are appropriate under the

ADEA, Title VII, Section 1981, the ADA, FMLA, and PHRA;

(s)    awarding Plaintiff the costs of suit, expert fees and other disbursements,

and reasonable attorney's fees; and,

(t)    granting such other and further relief as this Court may deem just, proper,

or equitable.

                                    CONSOLE MATTIACCI LAW, LLC

Dated: May 19, 2023              BY:    _____
                                    Lane Schiff, Esquire
                                    1525 Locust St., 9th Floor
                                    Philadelphia, PA 19102
                                    (215) 545-7676

                                    Attorney for Plaintiff,
                                    Elizabeth Taylor

15

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

| | |
|---|---|
| COMPLAINANT: | : |
| | : |
| **ELIZABETH TAYLOR** | :    Docket No. |
| | : |
| v. | : |
| | : |
| RESPONDENTS: | : |
| | : |
| **AQUA SERVICES, INC.** | : |
| | : |
| and | : |
| | : |
| **AQUA AMERICA, INC.** | : |
| | : |
| and | : |
| | : |
| **ESSENTIAL UTILITIES, INC.** | : |
| | : |
| and | : |
| | : |
| **ESSENTIAL UTILITIES COMPANY** | : |
| | : |
| and | : |
| | : |
| **AQUA, INC.** | : |

1. The Complainant herein is:

    Name:        Elizabeth Taylor

    Address:    REDACTED
    Newtown, PA 18940

2. The Respondents herein are:

    Names:    Aqua Services, Inc.; Aqua America, Inc.; Essential Utilities, Inc.;
    Essential Utilities Company; Aqua, Inc.

1

Address:  762 W. Lancaster Avenue
     Bryn Mawr, PA 19010

3. I, <u>Elizabeth Taylor</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (white), my age (67), and my disability (including history of and regarded as), and retaliation because I engaged in protected activity and sought reasonable accommodations for my disability, as set forth below.

**Discrimination and Retaliation**

**A. I specifically allege:**

[1]  I began working at Respondents on December 30, 2013.

[2]  I consistently performed my job duties in a highly competent manner.

[3]  My birth date is June 26, 1954, and I am age sixty-seven (67).

[4]  I last held the position of Risk Management Specialist.

[5]  I last reported to Shreen Williams (black, 37), Director of Risk Management. Williams reported to Christopher Luning (white, 55), Executive Vice President, General Counsel, and Secretary.

[6]  In February 2021, I began reporting to Williams.

[7]  Before reporting to Williams, I reported to Luning.

[8]  I was the oldest employee reporting to Williams.

[9]  I was the only disabled[1] employee reporting to Williams.

[10]  I was the only employee reporting to Williams who, to my knowledge, had sought reasonable accommodations for a disability.

---

[1] References herein to an employee not having a disability and/or having requested reasonable accommodations for a disability are to the best of my knowledge.

2

[11]     At the time of my termination, in addition to me, the following employees were directly reporting to Williams.

(a) Sarah Herchko (white, 32), Claims Specialist;

(b) Craig Nelson (white, 63), Claims Specialist.

[12]     I was treated differently and worse, and in a more hostile and dismissive manner, than younger and/or black employees were treated.

[13]     Williams unjustly criticized my performance.

[14]     Williams commented that I was "old."

[15]     Williams commented that Nelson (63), and I were "so old" we did not know what we were doing.

[16]     Williams referred to Nelson (63) and I as "Fred and Ethel," and commented that we did not know what we were doing.

[17]     Williams commented that "baby boomers" were resistant to change.

[18]     Williams commented that "baby boomers" were holding Respondents back.

[19]     Williams commented that "baby boomers" had to go.

[20]     Williams commented that "baby boomers" were antiquated.

[21]     Williams commented that, if "baby boomers" did not leave, the "millennials" and "Gen X" employees would leave.

[22]     Williams made comments about white employees using "white privilege" to get hired.

[23]     Williams berated me, and yelled "what about diversity and inclusion," when I mentioned that my cab driver was from Africa.

3

[24]      Williams falsely stated that "blacks" were told that they were not allowed on Respondents' second floor.

[25]      When Williams' made age or race biased comments, I objected.

[26]      In May 2021, in a conversation with Luning, I complained of age and race discrimination. I complained about Williams' above comments and conduct that demonstrated an age and race bias. He told me that he was aware of the same, but Williams was not going anywhere, and he was going to ignore her comments and conduct.

[27]      On June 7, 2021, in an email to Luning, I complained of age and race discrimination. I complained about Williams' above comments and conduct that demonstrated an age and race bias.

[28]      I received no response to my above email.

[29]      On June 7, 2021, following the above, in a virtual meeting with Williams, I complained of age and race discrimination. I complained about Williams' above comments and conduct that demonstrated an age and race bias. Williams' did not deny the same.

[30]      On June 8, 2021, in an email to Luning, I asked to schedule a time to speak with him regarding the situation with Williams.

[31]      On June 8, 2021, in response emails from Luning, he stated the following: "I am not ignoring you. I want to talk to her first and am wrestling with the Board on some things. Meaning—I need to find the time."

[32]      Luning did not schedule a time to speak with me.

[33]      On June 11, 2021, in a phone call with Dalinda Carrero-Papi (white, 50), Employee and Labor Relations Manager, I complained of age and race discrimination in connection with William. I complained about Williams' above comments and conduct that

4

demonstrated an age and race bias.  I gave Carrero-Papi the names of witnesses.  She told me that she would investigate my complaints.

[34]     On June 28, 2021, in a meeting with Williams and Carrero-Papi, I was issued a Written Disciplinary Action document.  My performance did not warrant a Written Disciplinary Action.  The document falsely stated that, on June 7, 2021, I "demonstrated disrespectful, unprofessional, insubordinate behavior" toward Williams.  In the document, William acknowledged my complaints of age and race discrimination.  The document included false statements and misrepresentations.  The document stated that, "[i]f improvement is not demonstrated, you will be subject to further disciplinary action, up to and including immediate termination."  When I asked what was going to be done in response to my age and race complaints, I was falsely accused of attacking, patronizing, and/or being inappropriate toward Williams, and was told that I had hurt Williams' feelings.

[35]     On June 29, 2021, Williams denied my request to work from home, despite my position having been designated as able to be performed remotely.  The stated reason was that I had been issued a disciplinary action.

[36]     Noncomplaining and/or younger and/or nonwhite employees were granted their requests to work from home.

[37]     On July 2, 2021, in a Memo from Carrero-Papi, she acknowledged my complaints of age and race discrimination, and noted that I believed that Williams "promulgated racism" at Respondents, spoke "inappropriately about white privilege," commented that I was "old," and made references to "baby boomers" in a derogatory manner.  She stated that she did "not find sufficient information to substantiate the claims [I] have raised," and that the investigation was closed.

[38]    Following my age and race discrimination complaints, I was treated differently and worse, and in a more hostile and dismissive manner, than noncomplaining employees were treated.

[39]    Williams ignored me.

[40]    Williams excluded me from meetings and dinners related to my job duties.

[41]    Williams did not greet me when she greeted noncomplaining employees who were sitting next to me.

[42]    Williams downplayed and did not acknowledge my accomplishments.

[43]    Employees commented that Williams was "rude" to me.

[44]    On July 21, 2021, I went out of work on a medical leave of absence due to the age and race discriminatory and retaliatory hostile work environment to which I was being subjected.

[45]    On October 12, 2021, in a phone call with Debra Matos (white, 45), Human Resources Business Partner, I stated that my doctor had cleared me to return to work from my medical leave of absence on November 1, 2021.

[46]    On October 21, 2021, in an email to Williams and Luning, I stated that my doctor had cleared me to return to work from my medical leave of absence on November 1, 2021, and that I looked forward to returning to my position.

[47]    I received no response to my above email.

[48]    On October 25, 2021, I heard that Williams was telling employees that she had terminated me, and that Respondents had hired my replacement.

6

[49]     On October 26, 2021, in an email to Williams and Luning, I stated that I had heard that Williams was telling employees that she had terminated my employment, and asked for clarification regarding my employment.

[50]     On October 27, 2021, in a phone call with Carrero-Papi and Matos, Respondents terminated my employment, effective November 1, 2021.  The stated reason was that I was not able to resolve my communications issues with Williams and Respondents did not see a way forward.

[51]     Respondents terminated my employment because of my race, my age, my disability, and/or my engaging in protected activity and/or my seeking reasonable accommodations for my disability, including a medical leave of absence.

[52]     I was the only employee reporting to Williams who was terminated on October 27, 2021.

[53]     Before I began reporting to Williams, I had no indication that my job was in jeopardy.

[54]     Respondents retained younger and/or black and/or nondisabled employees and/or employees who had not engaged in protected activity or sought reasonable accommodations in positions for which I was more qualified.

[55]     I had no opportunity to remain employed with Respondents.

[56]     Respondents failed to remedy or prevent the race, age, and disability discrimination and retaliation at Respondents.

[57]     Respondents replaced me with Sara Chandra (black, 35), Administrative Assistant III.  I was more qualified to perform my job duties than the nondisabled, younger,

7

black, noncomplaining employee who did not seek reasonable accommodations with whom Respondents replaced me.

[58]    Respondents' age, race, and disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[59]    Respondents promote diversity initiatives and diversity targets.

[60]    Without limitation, Respondents' literature states the following.

a)  "In early 2021, [Respondents] made a commitment to build on our foundation of diversity, equity and inclusion (DE&I), and we announced formal diverse employee and diverse supplier targets. This includes a multiyear plan to increase our diverse supplier spending to 15%, and increase employee diversity by 20%, the latter of which is based on a detailed assessment of the demographic makeup of our service footprint to ensure our company's employee base reflects the demographics of the communities where we operate."

b)  "Committed to searching for diverse candidates for senior roles within the organization."

c)  "[Respondents are] among the first utilities in our peer group to publicly announce both employee and supplier diversity targets that span all of our state operations and all of our utilities. During the coming years, we will nearly double our diverse supplier controllable spend and increase the percentage of our employees of

8

color by 20%, based on a detailed assessment of the demographics of the communities where we operate."

d) "Driving leadership commitment and accountability to an inclusive and diverse workforce."

e) "Building and retaining diverse workforce."

f) "We believe in executing these strategies, we will see a workforce that more accurately reflects the diversity in the communities we serve, our employees will embrace the diverse perspectives and experience of their colleagues and our leadership team will embrace diversity and ensure inclusion in our workforce."

g) "We have confidence in our multiyear plan to reach 17% employees of color, up from about 14% today [2020]."

h) "As a company, we have set goals to make a difference, and we are sharing our data openly to hold ourselves accountable. In 2021, we also added our new diversity goal (5% weighting) to our short-term incentive plan. By tying our diversity targets directly to executive compensation, we are encouraging our management team to prioritize and further building diversity in our operations. We have already seen success in our efforts. In 2020, our diversity hiring for the organization grew by more than 7% from 2019, and there were also gains at the management level of the organization, with 23% of the management team now comprised of women. At the board of directors level, more than 55% of the board is diverse, including

9

33% female directors. We are proud of the progress we have made in diversity, but we believe we can improve, particularly when engaging our customers, partners and peers in our DE&I efforts. We have a range of diverse recruitment tactics, many of which are supported through diversity associations and job boards for minorities, veterans and women engineers, and recruiting new talent from local community colleges and city-based universities."

[61]    Respondents' comments and conduct evidence a bias against older, white, and disabled employees and/or employees who engage in protected activity and/or seek reasonable accommodations for a disability, including a medical leave of absence.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my race (white), my age (67), and my disability (including history of and regarded as), and retaliated against me for engaging in protected activity and seeking reasonable accommodations for my disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

  **X**        **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d)**

10

_____    Section 5.1 Subsection(s) _____

_____    Section 5.2 Subsection(s) _____

_____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

**_X_    This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant seeks that Respondents be required to:

(a)  Make the Complainant whole.

(b)  Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c)  Remedy the discriminatory and retaliatory effect of past practice(s) and

    procedure(s).

(d)  Take further affirmative action necessary and appropriate to remedy the violation

    complained of herein.

(e)  Provide such further relief as the Commission deems necessary and appropriate.

11

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

11/23/2021
(Date Signed)

(Signature)    Elizabeth Taylor
REDACTED
Newtown, PA 18940

12

# EXHIBIT B

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   **Elizabeth Taylor**
      REDACTED
      **Newtown, PA 18940**

From:   **Philadelphia District Office**
        **801 Market St, Suite 1000**
        **Philadelphia, PA 19107**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2022-60361** | **Damon Johnson,** **State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> More than 180 days have passed since the filing of this charge.

> The EEOC is terminating its processing of this charge.

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS \*of your receipt of this Notice.\* Otherwise, your right to sue based on the above-numbered charge will be lost.*

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough
2/22/2023
**Karen McDonough**
**Deputy District Director**

Enclosures(s)

cc:   **For Respondent**
      Brain D Pedrow, Esq.
      Ballard, Spahr, Andrews & Ingersoll LLP
      1735 Market Street
      Philadelphia, PA 19103

      **For Charging Party**
      Katherine C Oeltjen, Esq.
      Console Mattiacci Law, LLC
      1525 Locust Street, 9th Floor
      Philadelphia, PA 19102